# In the United States Court of Federal Claims

No. 18-905C
(Filed: September 7, 2023)
**FOR PUBLICATION**

```
**************************************
DEAN BURBY, et al.,                  *
                                     *
                 Plaintiffs,         *
                                     *
v.                                   *
                                     *
THE UNITED STATES,                   *
                                     *
                 Defendant.          *
                                     *
**************************************
```

*David Ricksecker*, McGillivary Steele Elkin LLP, Washington, D.C., for Plaintiffs.

*Robert Kiepura*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant, United States. With him on briefs were *Brian M. Boynton*, Acting Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Reginald T. Blades, Jr.*, Assistant Director, as well as *Kathleen Haley Harne*, Assistant General Counsel, Federal Bureau of Prisons, Washington, D.C.

## OPINION AND ORDER

Plaintiffs are current and former Federal Bureau of Prisons employees at Federal Correctional Institution Oxford ("FCI Oxford" or "the Prison") in Oxford, Wisconsin. They seek overtime compensation under the Fair Labor Standards Act ("FLSA") for time spent traveling to and from hospital shift assignments more than 50 miles away from FCI Oxford. Plaintiffs also seek mileage reimbursement, per diem payments, and liquidated damages. The parties' cross-motions for partial summary judgment are ripe for disposition.[1]

Plaintiffs concede that some of their claims must be dismissed in light of recent developments from this Court and the Federal Circuit. But I agree with Plaintiffs

[1] Pls.' Mot. for Partial Summ. J. (ECF 37) ("Pls.' Mot."); Def.'s Resp. to Pls.' Mot. for Partial Summ. J. & Cross-Mot. for Summ. J. (ECF 40) ("Def.'s Mot."); Pls.' Reply & Opp. to Def.'s Mot. for Summ. J. (ECF 41) ("Pls.' Reply & Opp."); Def.'s Reply (ECF 44); Pls.' Suppl. Br. (ECF 46); Def.'s Suppl. Br. (ECF 47); Def.'s Second Suppl. Br. (ECF 53); Pls.' Second Suppl. Br. (ECF 54); Tr. of Oral Arg. (ECF 56) ("Tr.").

that at least some of the remaining time is compensable. Several factual disputes prevent granting either motion in full. *See* RCFC 56. Accordingly, both Plaintiffs' and Defendants' motions are **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

FCI Oxford inmates who require medical treatment are typically admitted to nearby hospitals, where correctional workers guard the inmates at all times. Compl. ¶ 6; Pls.' Mot., Ex. 1 at 29–30, 41–42. Hospital guard duties are performed by Prison employees working regular or overtime shifts. Pls.' Mot., Ex. 1 at 32, 45; Pls.' Mot., Ex. 2 at 44. Employees are sometimes asked to perform their regular shifts at the hospitals, and employees can also add their names on a roster to be assigned overtime shifts at the hospitals. *See* Pls.' Mot., Ex. 1 at 31–33. Even employees who voluntarily put their names on the roster may be disciplined if they are assigned and do not report. Pls.' Mot., Ex. 2 at 43–44.

Plaintiffs' claims involve shifts at a hospital in Madison, Wisconsin, which is approximately 77 miles away from FCI Oxford. Pls.' Mot., Ex. 1 at 62.[2] Prison employees are not compensated for time spent traveling to shifts at the Madison hospital unless they take a government vehicle. Pls.' Mot., Ex. 1 at 46, 49, 51, 65–66, 69–70; Pls.' Mot., Ex. 2 at 35. As discussed in more detail below, the parties dispute whether employees are compensated for mileage when they drive personal vehicles to hospital assignments. Pls.' Mot. at 10; Def.'s Mot. at 6; Pls.' Reply & Opp. at 2–3; Def.'s Reply at 17–19; Pls.' Mot., Ex. 1 at 51, Pls.' Mot., Ex. 4. They also dispute whether employees working hospital shifts qualify for per diem payments. Pls.' Mot. at 12, 16, 38; Def.'s Mot. at 7, 23; Pls.' Reply & Opp. at 3–4, 25–26; Def.'s Reply at 19; Pls. Mot., Ex. 1 at 76–78; Pls.' Mot., Ex. 4; Pls.' Reply & Opp., Ex. 10; Tr. at 4, 25–26, 68–72.

## DISCUSSION

### I. Jurisdiction

This Court has jurisdiction under the Tucker Act to adjudicate "any claim against the United States founded either upon … any Act of Congress or any regulation of an executive department … in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Because the Tucker Act is "a jurisdictional statute [that] does not create any substantive right enforceable against the United States for money damages," *United States v. Testan*, 424 U.S. 392, 398 (1976) (citing *Eastport S.S. Corp. v. United*

---

[2] Plaintiffs originally included claims related to shifts at the nearby hospital in Portage, Wisconsin, but following the decision in *Bridges v. United States*, they no longer pursue those claims. *See* 156 Fed. Cl. 129 (2021), *aff'd*, 54 F.4th 703 (Fed. Cir. 2022); Tr. at 4. Plaintiffs' claims related to travel to Portage are therefore dismissed, as provided below.

*States*, 178 Ct. Cl. 599, 605–07 (1967)), parties asserting Tucker Act jurisdiction must "identify a substantive right for money damages against the United States separate from the Tucker Act itself." *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004). That entails identifying a "money mandating" source of law, *i.e.*, a statute or regulation that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained and is reasonably amenable to the reading that it mandates a right of recovery in damages." *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1307 (Fed. Cir. 2008) (quotes and citations omitted) (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983), and *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003)).

Plaintiffs' claims for uncompensated travel time are based on FLSA, which is a money-mandating source of law. *See Abbey v. United States*, 745 F.3d 1363, 1369 (Fed. Cir. 2014). Their claims for mileage reimbursement and per diem payments rely on other sources of law that require non-discretionary payment by the United States to particular recipients. *See* 5 U.S.C. § 5704(a)(1) ("[A]n employee who is engaged on official business for the Government is entitled to a rate per mile established by the Administrator of General Services, instead of the actual expenses of transportation, for the use of a privately owned automobile when that mode of transportation is authorized or approved as more advantageous to the Government."); 41 C.F.R. § 301-11.3 (stating that an agency "[m]ust" pay a per diem when given conditions are met). Those terms are money-mandating as well. *See, e.g.*, *Jan's Helicopter*, 525 F.3d at 1307. The Court therefore has jurisdiction over Plaintiffs' claims.

"[T]he special statute of limitations governing the Court of Federal Claims requires" that timeliness be considered a jurisdictional question. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 132 (2008). FLSA claims must be brought within two years of alleged violations, or within three years of willful violations. 29 U.S.C. § 255(a). Plaintiffs allege that the challenged practices have continued "on an ongoing basis to date," Compl. ¶ 7, and the summary judgment record bears that out. Therefore, Plaintiffs' claims are timely.

## II. Merits

Plaintiffs have shown that their travel to the Madison, Wisconsin hospital is compensable as a matter of law. The amount of compensation must await further proceedings. Plaintiffs are also entitled to mileage and per diem payments when regulatory conditions are met, but there are factual disputes about whether the government owes such payments to any Plaintiff. Questions about Plaintiffs' entitlement to liquidated damages and a lengthened statute of limitations involve factual questions that cannot be resolved at this stage, on the present record.

### A. Summary Judgment Standard

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). "[A]ll evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Cross-motions for summary judgment should be evaluated as independent motions. "[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987) (citing *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 313–14 (2d Cir. 1981)). "[T]he court is not relieved of its responsibility to determine the appropriateness of summary disposition in a particular case" even if the parties agree that no material facts are disputed and summary disposition is appropriate. *Williams v. United States*, 144 Fed. Cl. 218, 230 (2019) (citing *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed. Cir. 1988)).

### B. Compensation for Time Spent Traveling

FLSA requires compensation for hours worked, including work "suffer[ed] or permit[ted]" by the employer. 29 U.S.C. §§ 203(g), 207(a)(1); *see also* 5 C.F.R. § 551.401(a). The Portal-to-Portal Act limits that mandate with a general rule excluding time spent in travel to and from work. *See* 29 U.S.C. § 254(a). But Office of Personnel Management ("OPM") regulations provide for circumstances where time spent traveling *is* considered hours of work, and therefore compensable:

> (a) Time spent traveling shall be considered hours of work if:
>
> (1) An employee is required to travel during regular working hours;
>
> (2) An employee is required to drive a vehicle or perform other work while traveling;
>
> (3) An employee is required to travel as a passenger on a one-day assignment away from the official duty station; or
>
> (4) An employee is required to travel as a passenger on an overnight assignment away from the official duty station during hours on nonworkdays that correspond to the employee's regular working hours.

> (b) An employee who travels from home before the regular workday begins and returns home at the end of the workday is engaged in normal "home to work" travel; such travel is not hours of work. When an employee travels directly from home to a temporary duty location outside the limits of his or her official duty station, the time the employee would have spent in normal home to work travel shall be deducted from hours of work as specified in paragraphs (a)(2) and (a)(3) of this section.

5 C.F.R. § 551.422; *see also* 5 C.F.R. § 551.401(a). Plaintiffs argue that their travel to shifts at the hospital in Madison is compensable under Section 551.422(a)(3). *See* Pls.' Mot. at 18–20; Pls.' Second Suppl. Br. at 2–5.

Defendant argues at the outset that Plaintiffs' claim is legally indistinguishable from *Bridges v. United States*, 156 Fed. Cl. 129 (2021), *aff'd*, 54 F.4th 703 (2022). *See* Def.'s Suppl. Br. at 2; Def.'s Second Suppl. Br. at 2–3. Under the Portal-to-Portal Act, an employer's need to staff a shift at a given location is ordinarily not enough to turn an employee's travel into compensable work. Tr. at 41; *see also* 29 U.S.C. § 254(a); *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 36 (2014); *Bridges*, 54 F.4th at 709. *Bridges* accordingly rejected compensation under FLSA for travel by a different group of prison employees to guard prisoners at a hospital.

The plaintiffs in *Bridges*, though, did not claim that their travel went beyond the geographical boundaries of their duty station. Because Section 551.422(a)(3) relates only to travel on one-day assignments away from an employee's duty station, there was no reason in *Bridges* to consider the regulation's meaning or effect. *See* 156 Fed Cl. at 137–38. Although *Bridges* resolves some aspects of this case against Plaintiffs — and Plaintiffs have narrowed their claims accordingly — travel to Madison presents a new issue.

Section 551.422(a)(3) distinguishes travel outside an employee's duty station from ordinary travel to the employee's workplace. "[N]ormal 'home to work' travel … is not hours of work." 5 C.F.R. § 551.422(b). But the time difference between an employee's home-to-work commute and the time he spends traveling "directly from home to a temporary duty location outside the limits of his or her official duty station" *is* compensable work time. *Id.* The regulation reflects OPM's determination that when an employee is told to do his work away from his regular duty station, his time getting there is "work" in a way that his ordinary commute is not.[3] That leaves no obstacle to

[3] The Department of Labor views travel in much the same way. *See* 29 C.F.R. § 785.37 ("[Travel to a one-day assignment in a different city] was performed for the employer's benefit and at his special request to meet the needs of the particular and unusual assignment. It would thus qualify as an

compensating Plaintiffs under Section 551.422(a)(3), provided its requirements are met.

Section 551.422(a)(3) can be read as a four-part test: To obtain compensation, Plaintiffs must have been (1) "required to travel" to the hospital in Madison (2) as "passenger[s]" on (3) "one-day assignment[s]" that are (4) "away from the official duty station." 5 C.F.R. § 551.422(a)(3). For the following reasons, Plaintiffs' travel meets that test as a matter of law.

First, Plaintiffs are "required to travel" when FCI Oxford management assigns them to cover a shift at the Madison hospital.

The government argues that the Plaintiffs are not "required" to travel to the Madison hospital because they volunteer for the hospital shifts and are not forced to work them. Def.'s Mot. at 17–18; Tr. at 39–41. But the travel is not optional, strictly speaking. Some hospital shifts are assigned to employees in the same manner as their regular shifts, and even when employees volunteer for overtime, they are subject to discipline if they accept an overtime assignment and do not arrive at the hospital on time. Pls.' Mot., Ex. 1 at 32, 47–48; Pls.' Mot., Ex. 2 at 43–44. Viewed that way, the hospital shifts are hardly more voluntary than any other kind of work assignment. Section 551.422(a)(3) also aligns with (a)(1) and (a)(2), which provide for compensation in other situations where the employee "is required to travel": OPM considers those kinds of travel not merely necessary in the abstract for the Prison's staffing needs, but part of the employee's job responsibilities. *See Bridges*, 156 Fed. Cl. at 137.

Second, despite some textual difficulties, Plaintiffs travel to Madison as "passenger[s]."

The parties appear to agree that Plaintiffs drive themselves to Madison in their own vehicles. In ordinary usage, a vehicle's driver is not a passenger. *See Passenger,* Oxford English Dictionary ("A person in or on a conveyance other than its driver, pilot, or crew.").[4] Interpreting the term to cover a driver would depart from the usual meaning — or possibly leave the phrase "as a passenger" without *any* independent meaning, contrary to the rule that regulations should be interpreted to avoid surplusage. *See Baude v. United States*, 955 F.3d 1290, 1305 (Fed. Cir. 2020) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)); *see also eSimplicity, Inc. v. United States*, 162 Fed. Cl. 372, 384 (2022). But the government concedes that there is no

---

integral part of the 'principal' activity which the employee was hired to perform on the workday in question[.]").

[4] Available at https://www.oed.com/dictionary/passenger_n?tab=meaning_and_use#31663883 (last visited Aug. 28, 2023).

*reason* for the regulation to distinguish between employees who travel to Madison as passengers, in the common sense, and those who drive themselves. Tr. at 54. Drawing such distinctions would be pointless and arbitrary. Deciding whether Plaintiffs are "passengers" within the meaning of the regulation therefore entails an interpretive dilemma: choosing between a linguistically unusual reading and an absurd one. *See Pitsker v. Off. of Pers. Mgmt.*, 234 F.3d 1378, 1383 (Fed. Cir. 2000) ("[A]n interpretation that causes absurd results is to be avoided if at all possible."); *see also Landstar Exp. Am., Inc. v. Fed. Mar. Comm'n*, 569 F.3d 493, 498 (D.C. Cir. 2009) (Kavanaugh, J.) ("A statutory outcome is absurd if it defies rationality."); A. Scalia & B. Garner, Reading Law 237 (2012).

This Court applies regulations according to their plain terms. *Tesoro Hawaii Corp. v. United States*, 405 F.3d 1339, 1346–47 (Fed. Cir. 2005) (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414–15 (1945)). At the same time, the Supreme Court has indicated that even when a phrase in an enacted text seems to have an obviously natural reading, peculiarities in the interpretation can suggest that the phrase "may not be as clear as it appears when read out of context." *King v. Burwell*, 576 U.S. 473, 488 (2015). Although a text "may seem plain 'when viewed in isolation[,]'" the "context and structure ... [may] compel [a court] to depart from what would be the most natural reading." *Id.* at 497 (quoting *Department of Revenue of Ore. v. ACF Industries, Inc.*, 510 U.S. 332, 343 (1994)); Reading Law 70. Here, interpreting the term "passenger" to mean "rider" — or nothing at all — avoids inexplicable and indefensible distinctions between employees' modes of conveyance, or between employees sitting next to each other in the front of the same car.

A literal interpretation of the term "passenger," moreover, would put the validity of the regulation into question. OPM's regulations implementing FLSA for the federal workforce must generally be consistent with the FLSA interpretations of the Department of Labor. *See Billings v. United States*, 322 F.3d 1328, 1332–33 (Fed. Cir. 2003). The Department of Labor's FLSA interpretations authorize compensation for one-day assignments to another city, but do not distinguish between drivers and passengers. 29 C.F.R. § 785.37. Although the Federal Circuit permits OPM to depart from the Department of Labor's position when the difference "is no more than needed to accommodate the difference between private and public sector employment" and is "reasonable," *Billings*, 322 F.3d at 1334, nobody argues that anything unique to federal employment precludes compensation for employees driving their own vehicles. Enacted texts should be interpreted to avoid questions about their validity. *Panama Refining Co. v. Ryan*, 293 U.S. 388, 439 (1935); Reading Law 66.

Nothing, moreover, suggests that the absurd interpretation was OPM's real intention. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 527–38 (1989) (Scalia,

J., concurring) (arguing that judges may look to extratextual sources to determine if an absurd result was the intention, though not to identify other plausible interpretations). The preamble to the OPM regulations describes them as a codification of two prior OPM guidance letters. *See* Federal Pay Administration Under the Fair Labor Standards Act, 45 Fed. Reg. 85,659, 85,661 (1980). One of those letters authorized compensation for federal employees driving themselves: "[I]f an employee drives himself/herself in a passenger vehicle outside regular working hours (including outside corresponding hours on a nonwork day) directly from his/her home to a temporary duty station, the employee shall only have counted as 'hours of work' the time spent driving which is in excess of normal home to work travel." Office of Personnel Management, Additional Instructions for Travel Time as 'Hours of Work' Under the FLSA, 1977 WL 180580 (Oct. 4, 1977). That language suggests OPM did not actually intend the term "passenger" to be interpreted literally, and that the natural reading of the regulation was the result of inadvertence.

It may be that OPM meant the phrase "as a passenger" to distinguish Section 551.422(a)(3) and (4) from the preceding clauses (1) and (2), which apply where travel itself is productive activity or part of the workday. If so, then the phrase has some independent meaning and function in the text. But even if the term "passenger" is surplusage, "the rule against surplusage is not absolute[.]" *eSimplicity*, 162 Fed. Cl. at 385 n.15 (quoting Linda Jellum & David Charles Hricik, *Modern Statutory Interpretation* 147 (2006)); *see also Marx v. General Revenue Corp*., 568 U.S. 371, 385 (2013). "It is appropriate to tolerate a degree of surplusage rather than adopt a textually dubious construction that threatens to render the entire provision a nullity." *United States v. Atlantic Research Corp*., 551 U.S. 128, 137 (2007).

Third, Plaintiffs' work at the Madison hospital qualifies as a "one-day" assignment.

The government concedes that in common parlance, one-day assignments include shifts — like shifts at the Madison hospital — that are equal in length to the employee's regularly scheduled shifts. Tr. at 57. The government argues that reading the regulation in that way would allow employees to work multiple one-day assignments in a single calendar day, or a one-day assignment that crosses from one calendar day to the next. *Id.* at 57–58. But that is no problem at all, for OPM has provided that an employee's "workday is not limited to a calendar day or any other 24–hour period." *See* 5 C.F.R. § 551.411(a). If a workday is not a calendar day, the government gives no reason why a one-day assignment should be.

Fourth, Plaintiff maintains, and the government no longer contests, that travel to the Madison hospital was "away from the official duty station." *See* Tr. at 17–18, 50–51.

OPM has provided that an agency "may prescribe a mileage radius of not greater than 50 miles to determine whether an employee's travel is within or outside the limits of the employee's official duty station for determining entitlement to overtime pay for travel." 5 C.F.R. §§ 550.112(j), 551.422(d). Although it is unclear what radius (if any) the agency designated for the Plaintiffs' official duty stations, Tr. at 50, both parties agree that the hospital in Madison, Wisconsin is beyond 50 miles from FCI Oxford. *Id.* at 47. To the extent the government could have argued that Plaintiffs' duty station included the hospital, the argument does not appear in the government's briefs and is forfeited.[5] *Insight Pub. Sector, Inc. v. United States,* 157 Fed. Cl. 416, 428 n. 10 (2021) ("[A] party waives arguments that are omitted from its briefing and are raised for the first time at oral argument.").

Because Plaintiffs' travel to the Madison hospital is "required … travel as a passenger on a one-day assignment away from the official duty station," *see* 5 C.F.R. § 551.422(a)(3), it counts as hours of work and is compensable. Plaintiffs are entitled to judgment as a matter of law to that extent. The exact amount of compensation involves questions of fact, *see, e.g.*, 5 C.F.R. § 551.422(b) (requiring that employees' regular commute times must be deducted from time compensable under Section 551.422(a)(3)), and will await further proceedings.

### C. Mileage and Per Diem Reimbursement

Plaintiffs also seek mileage reimbursement and per diem payments for travel to shifts at the Madison hospital. The regulations governing those reimbursements apply to Plaintiffs' travel. But the Plaintiffs' particular claims are fact-dependent and cannot be finally resolved at summary judgment.

The requirements for mileage reimbursement come from the Bureau of Prisons travel policy, which states that when employees are using their own vehicles "in the conduct of official business … and such use is … approved as advantageous to the Government … payment shall be made on a mileage basis." U.S. Department of Justice, Federal Bureau of Prisons Directive 2200.01 at Part 4, 1–4.1 (May 5, 2000); *see also* 5 U.S.C. § 5704(a)(1). Here, because covering overtime shifts at the Madison hospital is compensable work, *see* 5 C.F.R. § 551.422, it is also official business for the government. The government does not dispute that employees are entitled to

---

[5] Although the government raised the possibility that the official duty station could be larger than the grounds of the Prison at oral argument, this Court gave the government the opportunity to file supplemental evidence, Tr. at 51, and the government did not.

compensation for mileage, at least when the travel distance exceeds their normal commute. *See* Def.'s Mot. at 21–23; Def.'s Reply at 17; *see also* Pls.' Mot., Ex. 8 at PA383.

The parties' dispute concerns whether Plaintiffs claimed mileage reimbursement properly. Employees are required to submit mileage compensation forms. Def.'s Mot., Ex. 1 at 19. The government contends that properly documented claims for mileage compensation have been paid, Def.'s Mot., Ex. 1 at 20, 23; Pls.' Mot., Ex. 1 at 51, leaving only mileage that Plaintiffs failed to claim, Def.'s Mot. at 22. Plaintiffs respond that the average employee was not aware of the right to claim mileage or the proper mechanisms to do so, and that Plaintiffs should not bear the burden of having to submit secret or largely unknown forms. Pls.' Reply & Opp. at 24–25. They point to deposition testimony from Lieutenant Roger Reed, who runs day-to-day Prison operations and assigns shifts. Pls.' Mot, Ex. 1 at 11. Lieutenant Reed testified that he was not familiar with a generic mileage form and did not know if it had ever been used. Pls.' Mot., Ex. 1 at 72–74. Defendant answers that the Prison used a local form, not the one presented to Lieutenant Reed. Def.'s Reply at 18–19 (citing Def.'s Mot., Ex. 1 at 14–17).

The upshot of the back-and-forth is a factual question about whether Plaintiffs were denied an opportunity to claim mileage compensation. Whether any individual Plaintiff is entitled to mileage reimbursement for their travel to the Madison hospital therefore depends on disputes that cannot be resolved at summary judgment. To the extent the parties disagree about the method for computing mileage, the question has not been adequately briefed and can be resolved in conjunction with damages. *See* Pl.'s Mot. at 37–38 (raising arguments about the extent of the Agency's mileage payment liability); Pls.' Reply & Opp. at 25 (suggesting that "[t]he government's arguments regarding the amount of mileage reimbursement owed and deductions required for normal commuting time are all damages question[s]").

The requirements for per diem payments are in the Federal Travel Regulations, which entitle employees to an allowance when they (1) "perform official travel away from [their] official station, or other areas defined by [their] agency"; (2) "incur per diem expenses while performing official travel"; and (3) "are in a travel status for more than 12 hours." *See* 41 C.F.R. § 301-11.1. Only the third element is contested.

As a legal matter, Plaintiffs are correct that they are in "travel status" while traveling to the hospital, not just when working there.[6] OPM regulations define travel

[6] The government conceded that shifts longer than 12 hours (excluding travel time) meet the per diem requirements. Def.'s Reply at 19.

status to include travel between an employee's "home and a temporary duty station outside the limits of the employee's official duty station," less time the employee would have normally spent commuting. 5 C.F.R. § 550.1404(c)(1). That means the government is liable to employees for per diem payments when they work away from their official duty station for more than 12 hours, including the time spent traveling.

Plaintiffs put forward evidence that they worked shifts at Madison that were between 9.5 hours and 16.75 hours in length (plus 3 hours of travel time). *See* Pls.' Reply & Opp., Ex. 10; Pls.' Reply & Opp. at 26. That means at least some employees working shifts at the Madison hospital were eligible for a per diem.

Once again, certain factual questions remain. The government contends that employees are required to submit forms requesting per diem payments, *see* 41 C.F.R. § 301-52.1, and that Plaintiffs failed to allege that properly documented claims for per diem payments have gone unpaid. Def.'s Reply at 20. Because that argument appears in the government's final reply brief, Plaintiffs did not have a full opportunity to respond in writing. Whether any individual Plaintiff is entitled to per diem reimbursement for travel to the Madison hospital depends on factual questions that will await the merits.

**D. Liquidated Damages and Statute of Limitations**

Plaintiffs raise two arguments related to the government's intentions regarding FLSA compliance. Those arguments are not suited for resolution at summary judgment, and are therefore denied.

First, Plaintiffs seek liquidated damages. Although they are part of the normal measure of compensation under FLSA, *see* 29 U.S.C. § 216(b), this Court may decline to award liquidated damages "if the employer shows ... that the act or omission giving rise to [the FLSA claim] was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA.]" 29 U.S.C. § 260; *see also Bull v. United States*, 68 Fed. Cl. 212, 229, *clarified by* 68 Fed. Cl. 276 (2005), *aff'd*, 479 F.3d 1365 (Fed. Cir. 2007). The government bears the burden of establishing good faith and reasonable grounds. *Bull*, 68 Fed. Cl. at 229.

To establish good faith, the government must show it had "an honest intention to ascertain what the [FLSA] requires and to act in accordance with it," which involves a subjective inquiry. *Shea v. United States*, 976 F.3d 1292, 1300 (Fed. Cir. 2020) (quoting *Beebe v. United States*, 640 F.2d 1283, 1295 (Ct. Cl. 1981)). Here, agency witnesses testified that they did not have FLSA training, Pls.' Mot., Ex. 1 at 26–27; Pls.' Mot., Ex. 2 at 20, but they also testified that they had knowledge of certain FLSA requirements, made efforts to review the FLSA policy, and sought advice from a regional office, Pls.' Mot., Ex. 1 at 71; Pls.' Mot., Ex. 2 at 40–43, 46–52.

Whether the government acted in subjective good faith regarding compliance with FLSA implementing regulations is factually contested and cannot be resolved at summary judgment.

The government must also show it had "reasonable grounds for believing that [its] act or omission was in compliance," which "involves an objective standard." *Bull*, 68 Fed. Cl. at 229. "Proof that the law is uncertain, ambiguous or complex may provide reasonable grounds for an employer's belief that he is in conformity with the Act, even though his belief is erroneous." *Id.* (quoting *Beebe*, 640 F.2d at 1295). However, if the language of the law is plain, there is no ambiguity. *See, e.g.*, *Cheung v. United States*, 157 Fed. Cl. 508, 562 (2021). Here, the ambiguity in Section 551.422(a)(3) may have been enough to provide reasonable grounds for the government to deny compensation, but if the government cannot show that it acted in good faith, there will be no need to resolve the legal question of how much ambiguity is required.

Second, Plaintiffs wish to avail themselves of a three-year statute of limitations applicable to willful FLSA violations. 29 U.S.C. § 255(a). "Unlike good faith, the employee bears the burden of proving the willfulness of the employer's FLSA violations." *Adams v. United States*, 350 F.3d 1216, 1229 (Fed. Cir. 2003). A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988). OPM regulations define reckless disregard as "failure to make adequate inquiry into whether conduct is in compliance with the Act." 5 C.F.R. § 551.104.

The summary judgment record does not provide a sufficient basis to determine whether the Prison acted with reckless disregard. Plaintiffs argue that the Prison knew employees were traveling without compensation and failed to properly investigate whether it should compensate the employees. Pls.' Mot. at 34–37. However, the evidence is limited to a single agency witness, who attested that a human resources specialist in a regional office informed him that the travel time was not compensable. Pls.' Mot., Ex. 2 at 51. Neither party put forward evidence regarding the extent of the human resource specialist's investigation, whether he was following an internal policy or direction from supervisors, and if so, the extent of the investigation that went into the development of the policy or direction. The willfulness assessment is heavily fact-based, *Bull*, 479 F.3d at 1379, and so cannot be resolved at summary judgment here.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED IN PART** as to liability for Plaintiffs' time spent traveling to the Madison hospital, mileage reimbursements for travel to the Madison hospital, and per diem payments for shifts when Plaintiffs spend more than 12 hours in travel status. It is **DENIED** in all other respects.

Defendant's Motion for Summary Judgment is **GRANTED IN PART** as to Plaintiffs' time spent traveling to the Portage, Wisconsin hospital. Plaintiffs' claims regarding that travel are **DISMISSED**. Defendant's Motion is **DENIED** in all other respects.

The parties are **ORDERED** to submit a joint status report proposing further proceedings no later than October 10, 2023.

**IT IS SO ORDERED**.

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge